IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CV-137-FL(3)

| | |
|---|---|
| OLEAN D. HALL,<br>  Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
|  | ) **MEMORANDUM &**<br>) **RECOMMENDATION** |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>  Defendant. | )<br>)<br>)<br>) |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings **[DE's 16-20]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-16]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-18]** be GRANTED, and that the final decision by Defendant be AFFIRMED.

### Statement of the Case

Plaintiff filed an application for DIB on November 10, 2004 and an application for SSI on January 31, 2006. (Tr. 22). She alleges a disability onset date of September 13, 2004.

1

*Id.* Her application for DIB was denied at the initial and reconsideration levels of review, and her application for SSI was escalated to the hearing level. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated August 10, 2006. *Id.* at 22-29. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on March 29, 2007, rendering the ALJ's determination as Defendant's final decision. *Id.* at 5-7. Plaintiff filed the instant action on April 17, 2007 **[DE-3]**.

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the

court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 24). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) residuals of a fracture of the left ankle; and 2) sciatica. *Id.* In completing step three, however, the ALJ

3

determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  *Id*. at 25.

The ALJ then proceeded with step four of her analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work. *Id*.  Based on this finding, the ALJ found that Plaintiff was able to perform her past relevant work as a molding machine operator or a fast food worker.  *Id*. at 28.  Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of her decision.  *Id.* at 29.  In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

On December 4, 2003 Plaintiff was examined by Dr. James C. Harvell for a history of low back pain.  *Id*. at 201-203.  At that time she walked with a normal gait and had no deformities of the lumbar spine.  *Id*. at 201.  She also had normal range of motion in the spine.  *Id*. at 202.  Plaintiff had some tenderness along the greater trochanteric region on the left.  *Id*.  No paravertebral tenderness or spasm was demonstrated.  *Id*.  An x-ray of the lumbosacral spine revealed mild to moderately severe degenerative changes present at the L3-L4. L4-L5, L5-S1 levels.  *Id*.  Dr. Harvell diagnosed Plaintiff with: 1) degenerative spondylolisthesis with probable stenosis; 2) mild degenerative disc disease; 3) mild osteoarthrosis involving hips, bilateral; and 4) greater trochanteric bursitis, left.  *Id*.  There was no evidence of a herniated nucleus pulposus.  *Id*.  It was recommended that Plaintiff undergo further diagnostic studies.  *Id*. at 203.  After reviewing a myelogram/postmyelogram CT scan of the lumbar spine dated December 26, 2003, Dr. Harvell determined that Plaintiff

4

had no additional abnormalities. *Id*. at 200. Subsequent examinations by Plaintiff's treating sources have revealed no signs of progression of Plaintiff's disc disease. *Id*. at 189-235. Her range of motion has remained within normal limits and her neurological findings have also remained normal. *Id*.

Plaintiff sustained a work-related injury on September 13, 2004. She was seen in the emergency room where she was found to have sustained a trimalleolar fracture of the left ankle. *Id*. at 163. During a follow up on November 11, 2004, Plaintiff was examined by Dr. William de Araujo. *Id*. at 166. Dr. Araujo noted that Plaintiff was now weightbearing with a boot walker. *Id*. He further observed that Plaintiff had no gross disfigurement and that the fracture site was healing. *Id*. Plaintiff was instructed to begin weaning from the boot walker. *Id*.

Dr. Wayne Palmer examined Plaintiff on March 8, 2005. *Id*. at 175-181. He noted that Plaintiff's posture and ambulation were normal . *Id*. at 178. Plaintiff's reflexes were also normal. *Id*. at 179. She had no muscle weakness in either her upper or lower extremities. *Id*. Plaintiff was diagnosed with: 1) moderately chronic cervical segmental/somatic dysfunction; 2) moderately chronic thoracic segmental/somatic dysfunction; and 3) lumbar segmental/somatic dysfunction. *Id*. at 181. Ultimately, Dr. Palmer opined that Plaintiff was able to return to work without any health related restrictions. *Id*. Furthermore, he found that no follow-up radiographic studies or advanced diagnostic testing procedures were clinically necessary. *Id*.

On March 9, 2005 Plaintiff was examined by Dr. Bruce Wilhelmsen. *Id*. at 182-183.

At that time Plaintiff did not have any tenderness in her ankle and she did not have any pain with weightbearing. *Id*. at 182. Plaintiff lacked "extremes of dorsiflexion, dorsiflexing only to about 10 degrees bilaterally." *Id*. at 182. An x-ray revealed that the fracture was healed. *Id*. at 183. Dr. Wilhelmsen recommended that Plaintiff wear a pair of well cushioned shoes and that she begin a regimen of stretching. *Id*. He specifically noted that it was safe for Plaintiff to be up on her feet and ankles at this time and that further studies or operations on her ankle would not be necessary. *Id*. Plaintiff was instructed to follow up with Dr. Araujo as needed. *Id*.

Dr. Virginia Sanford opined on December 4, 2005 that Plaintiff is unable to work. *Id*. at 219. This opinion is handwritten on a single sheet from a prescription pad. *Id*. Dr. Sanford makes no attempt whatsoever to support her opinion with objective medical evidence. *Id*. With regard to Dr. Sanford's opinion, the ALJ stated the following:

> the treating physician's opinion is conclusory and is not supported by objective medical evidence. Further, this statement does not describe the claimant's abilities and limitations for specific work-related activities as required by the regulations. Therefore, the Administrative Law Judge finds that this opinion is not entitled to any weight.
> *Id*. at 28.

After a physical exam performed by a physician's assistant on February 23, 2006, Plaintiff was not specifically assessed any limitations due to her alleged back or ankle pain. *Id*. at 226. On April 5, 2006, Plaintiff reported to the physician's assistant that she had no pain in her lower extremities anywhere except her great toes and in the area just proximal to them. *Id*. at 224. Again on April 12, 2006 and June 6, 2006, Plaintiff was examined by the

6

physician's assistant for complaints relating to hypertension. *Id*. at 220-222. Plaintiff did not report any other symptoms to the physician's assistant. *Id*. Likewise, the physician's assistant did not assess Plaintiff as having any limitations as a result of back or ankle pain. *Id*.

Plaintiff's RFC was assessed by Dr. Robert Gardner on December 13, 2004. *Id*. at 167-174. Dr. Gardner stated that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; 4) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and 5) push and/or pull with no limitations other than as shown for lifting and carrying. *Id*. at 168. No postural, manipulative, visual, communicative or environmental limitations were noted. *Id*. at 169-171. On May 31, 2005, Dr. William Robie reviewed the medical evidence and affirmed Dr. Gardner's RFC assessment. *Id*. at 184.

During the hearing in this matter, Plaintiff testified that she stopped working after she fell down some steps at work and broke her ankle. *Id*. at 246. Plaintiff stated that she requires assistance from a cane to walk. *Id*. at 250. She also uses a brace for her left foot. *Id*. While she is capable of walking up steps, she asserted that she could not walk down steps without holding on to a railing or wall. *Id*. In addition, Plaintiff testified that "when I walk, stand up an hour, hour and a half, two hours at a time [my left foot] has a tendency to give way with me." *Id*. at 255. Specifically, Plaintiff contended that she could only walk 10-30 minutes at a time. *Id*. at 258. Furthermore Plaintiff testified that she was essentially incapable of lifting anything, and that she could neither sit nor stand for more than an two

7

hours at a time. *Id*. at 267-268. However, Plaintiff later testified that she was capable of : 1) cooking; 2) washing light dishes; 3) making her bed; 4) doing small loads of laundry; 5) driving for at least an hour and ten minutes at a time; and 6) grocery shopping. *Id*. at 259. Likewise, Plaintiff stated that she would be able to perform crafts such as basket weaving and doll-making if she were able to afford the materials. *Id*. at 265-266. The ALJ specifically noted that Plaintiff said she is not able to raise her right arm, but she did demonstrate the ability to perform such a maneuver while testifying. *Id*. at 26. Plaintiff asserted she has difficulty sleeping because of pain in her legs and feet. *Id*. at 263-264.

With regard to Plaintiff's testimony, the ALJ made the following observations:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. The claimant does not have any significant residual anatomical structural deformities related to her ankle fracture. There is no limitation of motion of the ankle joint and no signs of joint inflammation. She also has no limitation of motion of the spine and no evidence of nerve root compression which might be expected based on the degree of back pain alleged. She has normal gait and station. Further, the claimant had not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in a pain management program. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged. The claimant's own testimony of her activities of daily living indicate that she is not as functionally limited as alleged. Further, the Administrative Law Judge notes that the claimant received unemployment benefits which indicates that she held herself as available to work. In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's

allegations of functional restrictions are not fully credible.
*Id.* at 27

Based on this record, the ALJ made the following findings with regard to whether Plaintiff's impairments met or medical equaled one of the listed impairments:

> The claimant has not suffered from delayed union of her fracture as required for this condition to meet the relevant criteria in Listing 1.06. Her residuals from the ankle fracture have not resulted in an inability to ambulate effectively as required to meet Listing 1.02A. The claimant does not have symptoms or signs of a nerve root compression syndrome, arachnoiditis, or lumbar stenosis as required for her sciatica to meet Listing 1.04. The claimant's conditions are not manifested by other clinical findings indicating a level of severity comparable to the criteria of the relevant Listings and, therefore, her conditions can not be found to medically equal the criteria of the relevant Listings.
> *Id*. at 25.

Likewise, the ALJ made the following finding with regard to Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of medium work. The claimant can stand and walk for up to 6 hours in an 8-hour day, can lift a maximum of 50 pounds, and can lift and carry 25 pounds frequently.
> *Id.*

Finally, a vocational expert ("VE") testified at the administrative hearing. *Id*. at 273-275. She testified that Plaintiff's previous work could be classified as: 1) molding machine operator; and 2) fast food worker. *Id*. at 274. These jobs were either unskilled or semi-skilled and required light to medium exertion. *Id.* Based on the VE's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work. *Id*. at 28. Accordingly, the ALJ determined that Plaintiff had not been under a disability through the date of her decision. *Id.* at 29

9

Finally, portions of Plaintiff's memorandum seem to be misplaced. Specifically, Plaintiff's counsel discusses: 1) "Gulf War Syndrome"; 2) a study done on September 21, 2005 which shows prolonged sleep apnea with a mild degree of sleep disordered breathing; 3) "depression, anxiety and PTSD"; 4) Plaintiff's time in the service and her "VA rating"; 5) Plaintiff's prior relevant work as a "projectionist"; and 6) the ALJ's failure to analyze an unspecified mental impairment. Pl. Mem., DE-17, pg. 10-16. The instant matter does not involve any of these issues, and Plaintiff's counsel has apparently confused this case with another one.

Regardless, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for her resolutions of conflicts in the evidence. Although Plaintiff lists several assignments of error, these assignments essentially contend that the ALJ improperly weighed the evidence before her. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, her assignments of error are meritless.

## **Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's

10

Motion for Judgment on the Pleadings **[DE-16]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-18]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 16th day of January, 2008.

_____
William A. Webb
U.S. Magistrate Judge